IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

CLIFTON L. COLLINS,

        Petitioner,

v.                                        Case No. 3:13-cv-00763-JAG

HAROLD W. CLARKE, DIRECTOR,
VIRGINIA DEPARTMENT OF
CORRECTIONS,

        Respondent.

**MEMORANDUM OPINION**

This matter comes before the Court on the respondent Harold Clarke's Motion to Dismiss Clifton Collins' Petition for a Writ of Habeas Corpus. (Dk. No. 5.) Pursuant to 28 U.S.C. § 2254, Collins, a Virginia state prisoner, challenges his convictions for attempted abduction, in violation of Va. Code §§ 18.2-26 and 18.2-47, and use of a firearm in the commission of a felony, in violation of Va. Code § 18.2-53.1. (Dk. No. 1.)

Collins presses four claims in his habeas petition, none of which state a valid claim for relief. Accordingly, the Court GRANTS the respondent's motion to dismiss and DISMISSES the petitioner's § 2254 petition.

                I.        **Statement of Facts**

Collins, a bail bondsman licensed by the state of North Carolina, posted bond for a criminal defendant, James Sydnor. Sydnor fled North Carolina in violation of his bond. Collins traveled to Virginia after learning that Sydnor would be there attending a funeral. At the funeral, Collins accosted a suspect at gunpoint whom he believed to be Sydnor. Unfortunately, this caused two problems for Collins. First, Virginia has adopted a licensure statute for bondsmen,

and Collins does not have a Virginia license. Second, Collins did not confront Sydnor but rather his cousin, Spruill, the assistant police chief of a Virginia locality.[1]

These events led to Collins' convictions and the resulting prison sentence. Collins appealed, but both the Virginia Court of Appeals and the Virginia Supreme Court affirmed his convictions. *Collins v. Com.*, 283 Va. 263, 720 S.E.2d 530 (2010); *Collins v. Com.*, 57 Va. App. 355, 702 S.E.2d 267 (2010).

Collins then filed a petition for writ of habeas corpus with the Virginia Supreme Court. The Court denied his petition. *Collins v. Clarke*, No. 130099, at p. 3 (Va. 2013). Collins subsequently filed the instant petition in this Court.

## II.  Legal Standard

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 limits this Court's authority to grant relief from state court convictions by way of a writ of habeas corpus. AEDPA restricts the scope of federal review of both the factual findings and the legal conclusions made by state courts.

As to factual findings, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." *Gray v. Branker,* 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)); *Tucker v. Ozmint*, 350 F.3d 433, 439 (4th Cir. 2003). In order to overturn a state conviction, a federal court must find that the state court rendered "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The relevant question in reviewing factual findings is whether, "after viewing the evidence in the light most favorable

---

[1] Collins compounded his problems by accusing Spruill of engaging in incestuous sexual activities.

2

to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)).

Similar limitations apply to this Court's power to review a state court's legal conclusions. Under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor,* 529 U.S. 362, 410 (2000)).

Consequently, "state-court judgments must be upheld unless, after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." *Williams*, 529 U.S. at 387. "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be [objectively] unreasonable." *Id.* at 411.

A final check on the Court's authority applies in this case. If the underlying state court habeas decision denied relief based on an adequate and independent state law ground, the federal court cannot reverse the state court's decision based on a violation of federal law. *Weeks v. Angelone*, 176 F.3d 249, 269-70 (4th Cir. 1999).

### III. Discussion

Collins advances four arguments in support of his request for habeas relief. First, he argues that he had a federal common law right to pursue a bail jumper into another state, which

3

legalized his attempt to capture the fugitive and therefore should have precluded his convictions. Second, he claims that his convictions amounted to unconstitutionally retroactive punishment. Third, he contends that the state trial court erred in finding that he possessed the requisite specific intent to commit abduction. Finally, he says that he received ineffective assistance of counsel because his attorney failed to preserve his retroactive punishment argument and specific intent arguments for appeal. None of these claims succeed; the Court will address each argument in turn.

### A. Abrogation of Federal Common Law Right

Collins says that because he has a North Carolina license to act as a bail bondsman, he also has a federal common law right to arrest fugitives in any other state, even those states where he does not possess a bail bondsman license. Since he had a right to capture the fugitive, he says that his actions did not amount to abduction.

Collins' right allegedly stems from dicta in a 19th-Century Supreme Court case, *Taylor v. Taintor*, 83 U.S. 366, 371 (1872). In *Taylor*, the Court said that "[w]hen bail is given, the principal is regarded as delivered to the custody of his sureties …. They may pursue him into another state". *Id.* In Collins' direct appeal, the Virginia Supreme Court assumed, without deciding, that *Taylor* created a common law right for licensed bail bondsmen to arrest fugitives in states where they do not possess a license. *Collins v. Com.* 283 Va. at 269.[2] The Court, however, still upheld Collins' conviction, holding that Va. Code § 9.1-185 *et seq.*, "plainly

---

[2] While the Fourth Circuit has not expressly rejected Collins' claim, it has expressed considerable skepticism at his interpretation of the dicta in *Taylor*. *See Kear v. Hilton*, 699 F.2d 181, 182 n. 2 (4th Cir. 1983) ("We proceed on the assumption that the Taylor decision, which has never been overruled, remains the law. Neither party would appear to be in a position to seek abrogation of the rule in *Taylor's* case. Neither, at any rate, has sought to do so. However, we note, in passing, that it has been a long time since 1872); *See also Lund v. Seneca Cty. Sheriff's Dept.*, 230 F.3d 196, 198 (6th Cir. 2000) (holding that "[Taylor] does not create for bondsmen 'a clearly established right' under the Extradition Clause").

manifested [the General Assembly's] intent to abrogate the long standing common law rule allowing out-of-state bail bondsmen and bounty hunters to enter Virginia to apprehend fugitive bailees." *Id.* at 271.

Even assuming that *Taylor* creates a federal common-law right, states may abrogate federal court decisional rules so long as their actions do not violate due process. *Fletcher v. Weir*, 455 U.S. 603, 605 (1982). Collins does not argue that the Virginia Supreme Court's decision violated due process. His main arguments deal instead with the policies behind bail bond laws. *See* (Dk. No. 1 at ¶ 48) ("...[the act] makes no provision to permit a Virginia licensed bondsman or bail enforcement agent to recover a principal on behalf of the bondsman not licensed in Virginia"); (Dk. No. 1 at ¶ 51) ("This interpretation causes the contractual rights of the out of state bondman to be defined ... by the law of whichever jurisdiction to which the principal may abscond. Such a result could lead to chaos and uncertainty"). While these arguments may make some sense, they neither establish the underlying ruling's unreasonableness nor do they make out a valid claim for relief.

In any event, the Court finds that the Virginia Supreme Court acted reasonably. The Court notes that numerous courts over the past 40 years have found *Taylor* abrogated by various statutory enactments. These decisions underscore the reasonableness of the Supreme Court's conclusion on the abrogation issue.[3] The Virginia Supreme Court's opinion goes into great detail as to why the General Assembly abrogated *Taylor*. It addresses arguments on both sides

---

[3] *See Collins v. Com.*, 57 Va.App. 355, 366-368 (Va. App. 2010) (citing *Lund v. Seneca Cty. Sheriff's Dept.*, 230 F.3d 196 (6th Cir. 2000); *Lopez v. McCotter*, 875 F.2d 237 (10th Cir. 1989); *Ouzts v. Maryland Nat'l Ins. Co.*, 505 F.2d 547 (9th Cir. 1974); *Moncrief v. State, Comm'r of Ins.*, 415 So.2d 785 (Fla. Dist. Ct. App. 1982)); *Walker v. Com.*, 127 S.W.3d 596 (Ky. 2004); *Com. v. Wilkinson*, 613 N.E.2d 914 (Mass. 1993); *State v. Epps*, 585 P.2d 425 (Or. Ct. App. 1978); *State v. Shadbolt*, 590 N.W.2d 231 (S.D. 1999); *Green v. State*, 829 S.W.2d 222 (Tex. Crim. App. 1992).

before determining that the enactment of Va. Code § 9.1-185 *et seq.* had abrogated *Taylor*. That Court is well equipped to determine the intent of the Virginia General Assembly, and Collins has provided nothing to cast doubt upon its decision. Under AEDPA's relaxed standard, the Court finds the Virginia Supreme Court's decision reasonable, and rejects the petitioner's claim.

### B. Retroactivity

Collins next claims that his conviction deprived him of due process and constituted retroactive punishment. He says that he could not have foreseen that the Virginia Supreme Court would find that the Virginia General Assembly had abrogated *Taylor*. Collins raised this argument on appeal. The Court of Appeals refused to address this claim on its merits, expressly ruling that Va. Sup. Ct. Rule 5A:18 barred the petitioner from asserting it because he failed to preserve it at the trial court level.

While the Virginia Supreme Court did not specifically address the petitioner's retroactivity argument, this Court will assume that it upheld the Court of Appeals' ruling on the same grounds. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *see also Maxwell v. Com.*, 754 S.E.2d 516, 518-19 (Va. 2014) ("Rule 5A:18 contains the contemporaneous objection rule applicable to the Court of Appeals and parallels the requirements of the contemporaneous objection rule applicable to this Court as provided in Rule 5:25."). Rule 5A:18 constitutes an adequate and independent state law ground for decision that would bar the Court's review of this claim. *See Weeks v. Angelone*, 176 F.3d at 270. Virginia's appellate courts have consistently required parties to object at trial in order to preserve issues for appeal, and such a ruling precludes habeas relief. *See Martinez v. Ryan*, — U.S. —, 132 S.Ct. 1309, 1316 (2012) (holding that in habeas cases, a "state procedural rule is a nonfederal ground adequate to support the judgment [if] the rule is firmly established and consistently followed").

Collins tries to avoid the effect of the procedural default rule by claiming that he did not have to assert the retroactivity defense at his trial. He asserts that the retroactive application did not occur until the Virginia Supreme Court upheld the decisions of the Circuit Court and Court of Appeals and ruled that the Virginia General Assembly had abrogated *Taylor*. Rule 5:25 (applicable to the Supreme Court), and 5A:18 (applicable to the Court of Appeals), however, provide identically that "[n]o ruling of the trial court … will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling." These rules "afford[] the trial court an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals." *Scialdone v. Com.*, 279 Va. 422, 437, 689 S.E.2d 716 (2010) (quoting *Weidman v. Babcock*, 241 Va. 40, 44, 400 S.E.2d 164 (1991)) (internal quotations omitted). To accomplish this goal, "the parties must inform the circuit court 'of the precise points of objection in the minds of counsel.'" *Maxwell*, 754 S.E.2d at 519 (quoting *Gooch v. City of Lynchburg*, 201 Va. 172, 177, 110 S.E.2d 236 (1959)). The parties must also make their objections "at a point in the proceeding when the trial court is in a position, not only to consider the asserted error, but also to rectify the asserted error." *Scialdone*, 279 Va. at 437. For the purposes of these rules it does not matter when the retroactive application occurred, only when the need to object presented itself.

Here, right before finding Collins guilty, the trial court conducted an extensive hearing on whether the enactment of Va. Code § 9.1-185 *et seq.* had resulted in *Taylor's* abrogation. (Trial Transcript, July 17, 2009 Motions Hearing, pp. 14-61.) The trial court specifically asked the petitioner's attorney whether the Virginia General Assembly could abrogate *Taylor*, and whether it had done so. (*Id.* at pp. 20-21.) The trial court went on to find that "the *Taylor v. Taintor* case is a statement of what the common law was many years ago," while noting that "Virginia has the

right to change [its] own law." (*Id.* at p. 60.) The Court also held that that the licensing statute applied to Collins who, consequently, had "act[ed] as an unlicensed bondsman in Virginia." (*Id.* at p. 61.)

Once the circuit court determined that the bail bondsmen licensing statute applied, Collins' retroactivity claim clearly presented itself. At this point, he could have argued that the charges against him would result in retroactive punishment because of a change in the license law that would previously have allowed him to arrest the suspect. Had Collins done so, the trial judge could have considered the issue, and might have ruled in Collins' favor. Collins did not do this. He failed to make any objection to retroactivity. As a result, Virginia law barred him from asserting this claim on appeal. The Virginia Supreme Court's application of this procedural bar constitutes an adequate and independent state law decision that precludes the Court from addressing the petitioner's retroactivity claim.

### C. Lack of Specific Intent

In his third claim, Collins argues that his conviction violated due process. He says that he only intended to detain a fugitive in his role as a bail bondsman, and thus did not have the specific intent to abduct Spruill. Collins first raised this claim in his state habeas petition. The Virginia Supreme Court rejected Collins' claim because he failed at trial to preserve the issue for appeal. *Collins v. Clarke*, No. 130099, at p. 3 (citing *Slayton v. Parrigan*, 215 Va. 27, 29 (1974)). The *Parrigan* rule constitutes an adequate and independent state law ground for default. *Vinson v. True*, 436 F.3d 412 (4th Cir. 2005). This bars the Court from considering the petitioner's claim unless he adduces evidence demonstrating "cause for the default and actual prejudice as a result of the alleged violation of federal law." *Id.* at 417 (quoting *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546 (1991)) (internal quotations omitted). "To

establish 'cause,' a prisoner must 'show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" *Id.* (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639 (1986)). Specifically, the petitioner must show that the "factual or legal basis for the claim was not reasonably available to the claimant at the time of the state proceeding." *Id.* (quoting *Roach v. Angelone*, 176 F.3d 210, 222 (4th Cir. 1999)) (internal quotations omitted).

Collins has shown no reason to bypass Virginia's requirement that he preserve his specific intent argument at trial. The Court must honor the Virginia Supreme Court's ruling, and it rejects the petitioner's claim as having already been decided on an adequate and independent state law ground.

### D. Ineffective Assistance of Counsel

Collins next claims that he received ineffective assistance of counsel, in violation of the Sixth Amendment, because his attorney failed to preserve the retroactive punishment and specific intent arguments at trial. When a habeas petitioner raises an ineffective assistance of counsel claim, the Court reviews the claim through both the strictures of AEDPA as well as the standard of *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and it progeny. *Moore v. Hardee*, 723 F.3d 488, 495-96 (4th Cir. 2013). Under this "doubly deferential review," the Court must determine "not whether counsel's actions were reasonable, but whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* at 496 (quoting *Harrington v. Richter*, — U.S. —, 131 S.Ct. 770, 788 (2011)) (internal quotations omitted).

To satisfy *Strickland*, a convicted defendant must show that his counsel's representation was both deficient and prejudicial to his defense. *Strickland v. Washington*, 466 U.S. 668, 687

(1984). To satisfy the deficient performance prong, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F .3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The Court need not determine whether counsel performed deficiently if it can readily dismiss the petitioner's claim for lack of prejudice. *Id.* at 697.

AEDPA limits the Court's review in this case because the Virginia Supreme Court denied Collins' claim on the merits, holding that it satisfied "neither the 'performance' nor the 'prejudice' prong … enunciated in *Strickland v. Washington.*" *Collins v. Clarke*, No. 13009, at p. 3. Section 2254(d) bars the Court from granting habeas relief on this ground unless the Virginia Supreme Court applied *Strickland* in an unreasonable manner. *Moore*, 723 F.3d at 496 (quoting *Richter*, 131 SCt. at 785, *Cullen v. Pinholster*, — U.S. —, 131 S.Ct. 1388, 1410-11 (2011)). The Court may not grant Collins habeas relief even if his claim has merit unless "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with the [Supreme] Court's precedents." *Id.* (quoting *Richter*, 131 S.Ct. at 785) (internal quotations omitted).

Taking the retroactive punishment argument first, the Court finds that the Virginia Supreme Court did not apply *Strickland* unreasonably. The Supreme Court rejected Collins' claim due to his testimony at trial. Collins testified that he did not mistake the victim for the fugitive, but merely believed they looked similar. He also testified that he only spoke with

Spruill for 45 seconds, telling him that he needed to find Sydnor and asking if Spruill had any information on Sydnor's whereabouts. In other words, Collins testified that the criminal acts in question never occurred. The Virginia Supreme Court found that Collins had satisfied neither the prejudice nor performance prongs of *Strickland* because a retroactivity argument would have no bearing on a case where the defendant simply denies "committing the acts for which he was charged." *Collins v. Clarke*, No. 130099, at p. 3. The Court agrees with this conclusion.

While Collins' counsel advanced the abrogation argument at trial, the core of his defense was a denial of the very acts that made up the offense. Given Collins' testimony, it made tactical sense to argue hardest about innocence, not retroactivity. Moreover, even if the petitioner's counsel had preserved the retroactive punishment claim, the Court finds it hard to see the outcome of the case being any different. The Virginia statute requiring a bail bondsman license had been on the books for almost three years. Collins should have known that he needed a license. Not having a license opened him up to the charges in this case. Even if he did not know about the law, it hardly subjected him to retroactive punishment. Thus, as to the retroactivity argument, the Virginia Supreme Court did not apply *Strickland* unreasonably.

Collins also claims that he received ineffective assistance of counsel because his trial counsel failed to preserve his lack of specific intent claim. The petitioner claims that he did not possess the requisite intent to abduct Spruill because he only intended to "act[] as a bail recovery agent, albeit without a license," and did not intend to deprive Spruill of his personal liberty. (Dk. No. 1 at ¶ 86.) He argues that the "intent analysis in an abduction case is based on whether there is intent to deprive [the victim] of personal liberty rather than simply an intent to commit another offense which may require temporary detention." (Dk. No. 1 at ¶ 88.) According to Collins, any detention that occurred was simply incidental to his true intent. (Dk. No. 1 at ¶ 85.) Collins also

raised this claim in his state habeas petition. The Virginia Supreme Court rejected it, finding it "irrelevant" that Collins committed the attempted abduction while also acting as an unlicensed bail bondsman. The Court agrees with this conclusion as well.

Collins' argument simply makes no sense. The abduction statute criminalizes detaining a person with the intention of depriving him of his personal liberty, without a valid justification or excuse. Va. Code. § 18.2-47. The justification or excuse necessary to avoid criminal punishment does not concern the defendant's subjective view of his actions. Otherwise, any unlicensed bail bondsman could avoid criminal punishment under § 18.2-47 by claiming that he merely intended to violate Virginia's bail bondsmen licensing statute. The required intent is an intent to deprive the victim of freedom of movement.

The petitioner clearly intended to deprive Spruill of his personal liberty after he mistook Spruill for a fugitive. He held Spruill at gunpoint and attempted to pull Spruill into his car. He wanted to detain him and forcibly take him back to North Carolina. It does not matter whether the petitioner intended to act as a bail bondsman. Collins' subjective belief that he was acting as a bail bondsman changes neither the fact that he intended to arrest Spruill nor that he did not possess the authority to do so.

The petitioner's counsel did not provide ineffective assistant by failing to raise this meritless claim because it would not have altered the outcome. Collins has failed to meet the prejudice prong of *Strickland*, and the Virginia Supreme Court applied *Strickland* reasonably.

### IV. Conclusion

For the foregoing reasons, the Court GRANTS the respondent's Motion to Dismiss, (Dk. No. 5), and DISMISSES the petitioner's petition for a writ of habeas corpus.

An appropriate Final Order shall issue.

Date: 6/19/14
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge